UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

In the Matter Of,

FREDERICK M. OBERLANDER,
an attorney admitted to practice before
this Court,

      Respondent.

----------------------------------------------------------------------X

**NOTICE OF MOTION TO RECON-
SIDER FOR RELIEF UNDER FRCP
60(b)(6) AND LR 6.3 OR FOR CERTI-
FICATION PER FRCP §54{b}**

ORAL ARGUMENT REQUESTED

16-MC-2637

    **PLEASE TAKE NOTE,** on the annexed Memorandum of Law and all prior pleadings

and proceedings had herein, Respondent Frederick M. Oberlander will move this Court before

the Hon. Ann Donnelly, U.S.D.J., at the United States Courthouse, 225 Cadman Plaza East,

Brooklyn, NY 11201, on a date and time to be set by the Court, per (i) Local Civil Rule 6.3

to reconsider and/or reargue the August 13, 2018 Order insofar as the Committee found that

Respondent violated provisions of the New York Rules of Professional Conduct and, upon

reconsideration, vacate this determination and set the matter for an evidentiary hearing on the

charge resolution of which was not dismissed or deferred; (ii) grant Respondent's motion per

FRCP 60(b)(6) for relief from the August 13, 2018 Order; (iii) alternatively, grant respond-

ent's motion per FRCP 54(b), for entry of final judgment on each of the charges for which

Respondent was "convicted" in the Order, except for the charge resolution of which has been

deferred by the Committee; and any other charges in the originating Order to Show Cause of

November 2016 not disposed of or deferred by the August 13, 2018 Order; and  (iv) award

Respondent any other relief the Court deems just and proper.


/s/ Frederick M. Oberlander
*Respondent pro se*

Montauk, New York
August 27, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

In the Matter Of,

FREDERICK M. OBERLANDER,                               16-MC-2637
an attorney admitted to practice before
this Court,

     Respondent.

-------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION FOR
RECONSIDERATION UNDER FRCP RULE 60 (b) (6) AND LR 6.3
AND CERTIFICATION PURSUANT TO SECTION 54 (b)**


/s/ Frederick M. Oberlander          Montauk, New York
*Respondent pro se*               August 27, 2018

# CONTENTS

I.   INTRODUCTION ................................................................................................ 2

II.  WITH RESPECT TO THE LERNER MOTION OF EVEN DATE ............................... 3

A.   Joining As If Separately Stated Herein in Respondent's Own Behalf ..................... 3

1.   As to the charges.................................................................................... 3

2.   As to the relief requested ........................................................................ 3

B.   Amplifications to the Lerner Arguments ................................................... 6

1.   As to the argument that the Committee omitted numerous facts.............................. 6

2.   As to the argument that Respondent (Lerner in his motion, Respondent here) was deprived of opportunity to cross-examine his accusers ........................................ 7

3.   As to the extortion issues in general ........................................................ 8

# I.   INTRODUCTION

In  2014, then-Chief Judge Amon received complaints from Felix Sater alleging that Respondent and Lerner had committed misconduct. Apparently, no action was taken for years.

On November 18, 2016, apparently without having first appointed counsel to investigate, report, and recommend whether to do so, the committee issued charges almost literally duplicating the allegations in the Sater complaints, ordering Respondent and Lerner to show cause why it should not impose discipline on them pursuant to Local Rule 1.5.

In September 2016, supplemented by leave in June 2018, Respondent and Lerner made submissions (Respondent adopted Lerner's submissions and supplement) as to why the Committee should not impose discipline, alternatively seeking an evidentiary hearing to examine witnesses, proffer and impeach evidence, and argue to the Committee in defense and, if need be, in mitigation.

On May 9, 2018, the Committee, without explanation, appointed James Wicks, Esq., as counsel *nunc pro tunc* 2016.

On August 13, 2018, stating there were no facts in dispute requiring a hearing, the Committee issued an Order suspending Respondent from practicing law in the Eastern District of New York for a year and reserving decision on further discipline pending outcome of a criminal investigation.

This application seeks reconsideration of that Order by requesting the rectification of errors, most of constitutional dimension. The relief is requested under FRCP 60(b)(6) (relief for any "extraordinary circumstance" or "extreme and undue hardship" and LR 6.3 (if the court overlooked law or factual matters which may alter the Court's conclusion).

For economy, Respondent adopts all the argument, averment, and representation set forth in the Motion to Reconsider filed by Lerner on 16-MC-2636, except as noted below. Otherwise, Respondent amplifies and expands upon some of the points made by Lerner, also as noted below.

## II.    WITH RESPECT TO THE LERNER MOTION OF EVEN DATE

### A.    JOINING AS IF SEPARATELY STATED HEREIN IN RESPONDENT'S OWN BEHALF

#### 1.    As to the charges

The charges filed against Lerner, and the subset for which he was "convicted," effectively differ from those filed against Respondent, and the subset for which he was "convicted," only insofar as Lerner was charged with (1) agreeing to represent Respondent despite knowing that Respondent intended to obtain a settlement by threatening illegal conduct and (2) with failing to terminate his representation of Respondent when it became clear that the representation would result in violations of the New York RPC, and was "convicted" of the second. Obviously, neither charge was or could have been brought against Respondent.

With respect to all charges but those, for avoidance of ambiguity, all charges brought against Respondent, Respondent joins, adopts, and ratifies all that is in Lerner's motion for reconsideration as if set forth here in their entirety as the writings of Respondent in his own name and behalf.

With respect to those charges brought against Lerner only, and the subset for which he was "convicted," Respondent concurs with all that is in Lerner's motion as to fact and law.

#### 2.    As to the relief requested

Again, Respondent joins, adopts, etc. that which Lerner requests, but because the posture of this case is atypical, the various "reliefs" requested may partially contradict or step on each other.

As it seems the Committee failed to follow its own Rules (whether it could do so and remain faithful to due process is discussed below), Respondent has no idea what evidence the Committee has but has not set forth in its Orders (and, by the absence of a hearing, the same is true of the Committee with respect to evidence Respondents have but have not set forth in their submissions.

But Respondents do know, because the Committee said so in its Orders, that it had "no or little" evidence that Respondents made in frivolous filings or engaged in dilatory tactics. (How and why Respondents were charged with such misconduct in the admitted absence of evidence is another matter addressed below).

Now, Lerner, and thus Respondent by his joining in, argues that the primary problem with the Orders imposing discipline is the failure of the Committee to afford Respondents evidentiary hearings. Respondents therefore request that the entirety of both Orders be vacated for what is, in no uncertain terms, especially under the facts of this case, structural error, thus per se prejudicial.

If the Committee agrees, then what? If this were civil litigation, and we were asking for a reconsideration of a grant of Summary Judgment because there were factual disputes requiring a trial and there were factual issues of state of mind and credibility also requiring a trial, then if the motions are granted, there is a trial. But that example presupposes that the parties got to Summary Judgment stage after disclosure was held and then closed.

In this matter, there is no analogue. In sum, Respondents don't know whether, if in granting vacatur and a hearing, such hearing will take place on the record as it is, without any of the process that would normally follow from the appointment of a panel attorney to investigate through to charges, or the clock will be reset, the Committee and Respondents able to develop more evidence.

That in turn matters because, while Lerner and Respondent are requesting that those charges which were dismissed remain dismissed even if three is vacatur and a hearing, the fact remains

that they were dismissed for evidentiary insufficiency, so presumably the Committee could decide that in the event of a vacatur and hearing it is entitled to vacate those dismissals without prejudice (a point Respondent does not concede but admits is not without force).

Accordingly, Respondent urges that the following relief be granted (and to the extent this varies from the Notice of Motion, this controls):

*First*, that the entirety of the Orders be vacated for structural constitutional failure and the clock be reset so that the Committee with its panel counsel may do as it says it does by its own Rules and so may Respondents in appropriate manner, including good faith discovery. Again, for clarity, Respondent requests that upon vacatur for a hearing there must be at a minimum a reset back to the appointment of the MJ or panel, which then may grant discovery, and so on. LR 1.5. Indeed, Respondent has no objection to a reset back to the point that the panel attorney would, if he has not somehow already, first investigate the charges.

*Second*, that if the Orders not be vacated, so there be no hearing, all disputed facts should be restated in favor of Respondents, as the Order was issued on papers, and all omitted facts set forth.[1]

*Third*, that if the Orders not be vacated, thus there be no hearing, then even without such a restatement of facts, certainly with them, the "convictions" related to, dependent on or derivative of extortion be vacated for evidentiary insufficiency and failure to properly notice in the OSC's and set forth and find the elements of the crime, as set forth in Lerner's motion and Respondent's amplification below; the same as to "convictions" for discourtesy, which state without evidentiary support that what Respondents said of judges was false and malicious or state as false that which is opinion and miscast as discourtesy that which is legal argument.

---

[1] Respondent believes this request should be made by FRCP 52 motion, and expects to file one.

*Fourth*, if application of any of the above shall remove or vacate any "conviction" but leave standing any other conviction but for the "piling on" provisions of Rule 8.4, then the convictions for violating Rule 8.4 must be set aside for reargument as the predicate patterns will have changed.

*Fifth*, if application of any of the above shall result in fewer "convictions" standing than now stand, but not zero (as would be on full vacatur), discipline imposed be reevaluated accordingly.

*Sixth*, if application of any or none of the above results in any "convictions" standing, that without regard to evidentiary hearing on other charges, there be a hearing in mitigation, as courts have held that imposition of attorney discipline is reviewed on appeal like the review of criminal sentences (which suggests failure to allow a hearing in mitigation with appearance in person before the committee is akin to failure to allow a defendant to be heard at sentencing (unthinkable); and suggests that as federal law requires sentences be stated in open court, with a statement of reasons, the Committee should redraft its Orders to make clear why it imposed the discipline it did.

*Seventh*, if application of any or none of the above shall result in any "convictions" standing and there be no hearing in mitigation, then pursuant to FRCP 54(b) such be severed so that appeal may be taken immediately and that imposition of discipline be stayed pending such appeal.

### B.   AMPLIFICATIONS TO THE LERNER ARGUMENTS

#### 1.   As to the argument that the Committee omitted numerous facts

In the list on page 7 of Lerner's motion, item (18) should be replaced with:

That the Request for Judicial Notice was filed after Glasser closed the unsealing proceedings, and Respondents wanted to present evidence showing that Sater's conviction and cooperation was a matter of public record in various filings on the *Coppa* docket and the Congressional Record. The Request was 4-pages proper but attached 15 court filings and two lengthy congressional hearings—and a chart of the attached documents explaining the significance of each document to the case and the unsealing issue before the court. For example, Ex. A contained a "3500 letter from AUSA Pitofsky" to defendant Ray "stating **the government will call Sater as a cooperating witness.**" Ex. H is

an "open-court hearing" with all *Coppa* defendants and counsel present where it is stated, "***Mr. Felix Sater, an unindicted co-conspirator and cooperator with the government***, an individual who is going to testify." The two congressional hearings addressed the "Fairness in Sentencing Act" and "Organized Crime on Wall Street." hearings contained the March 2, 2000, press release from the U.S. Attorney's Office for the EDNY, that identified Sater by name and his RICO conviction. (*Id.*, 35-37);

**2.  As to the argument that Respondent (Lerner in his motion, Respondent here) was deprived of opportunity to cross-examine his accusers**

The following should be added to the paragraph beginning on page 9 of Lerner's motion:

Respondents also dispute that there was any concrete harm or threat to Sater's safety.

Further, Oberlander states he is only threatening "lawful and legal" dissemination of information in his 2010 letters to Sater's counsel. Indeed, he attached to the October letter a proposed *redacted version* of the *Kriss* I Complaint that does not contain any information from allegedly sealed documents. It is this Complaint that Oberlander is explaining will be disseminated, but not even publicly, only to the other defendants as courtesy copies instead of serving them so it need not be docketed and if it eventually is made public it will bring notoriety (as it shows hundreds of millions of dollars of money laundering and fraud by Bayrock in the development of Trump properties).

Yet this Committee repeatedly sided with Sater's version of the story that Oberlander threatened to "publicly releas[e] documents that had been sealed by a federal court." (Lerner Order at 2 (Quoting Sater's Complaint)) Ultimately, the Committee itself found that Oberlander and Lerner "threatened to disseminate the Sealed Materials unless Sater and the other defendants in the Southern District action agreed to a monetary settlement." (Lerner Order, 38; Oberlander Order, 36). As the Committee did not hold a hearing, it was not at liberty to take Sater's view as credible and discard Respondents' evidence. It was required to resolve disputed facts or inferences in Respondents' favor.

Indeed, it is impossible to understand how the Committee could make such findings at all, because Oberlander's letter actually states: (2010.10.18 Letter to Herman, 2.)

> *The attached redacted 'complaint' is for immediate dissemination, not service,* ***upon all defendants*** to incent them into settlement discussions without the necessity for blowing this all up publicly. First, allegations which quote from or describe the contents of the PSR, complaint proper, information or cooperation agreement will be blacked out in standard redaction typeface. ***For your review***, they are shown now as strike-through gray highlighted font.

And, Oberlander is expressly asking Sater's counsel for approval before dissemination to other defendants, *and it is, respectfully, inconceivable how the Committee could find that a request to Sater's counsel to approve before a non-public dissemination of material not sealed could be found to be a threat to publicly disseminate sealed documents*

other than by assuming without evidentiary basis to do so that Oberlander was using some eldritch Aesopian language such that when he said "red" he meant "black."

And, in his November 9, 2010 letter, Oberlander says if they can't agree on a redacted complaint, he'll ask Judge Buchwald for an order to use the one he proposed, and she will likely issue it, and order it uploaded to PACER, where the press would find it. *That cannot support a finding of a threat to disseminate what expressly contemplates dissemination by court order.* [010.11.09 Letter to Herman).

### 3. As to the extortion issues in general

#### a) *Respondents Were Denied an Opportunity to Be Heard as to Legal and Factual Defenses to the Charge of Attempted Larceny By Extortion*

In *Ruffalo*, the Supreme Court held that it was a denial of due process for an attorney to be disciplined where a charge was added after the attorney and another central witness had testified. Even though the disciplining state court allowed the attorney "several months to respond to" the new charge after the hearing, the Supreme Court still held it was a denial of due process to add the charge during the course of the proceeding, after he had submitted his own and others' testimony. *See Rufallo*, 390 U.S. 544, 551 n.4. The Court explained:

These are adversary proceedings of a quasi-criminal nature. **The charge must be known before the proceedings commence.** They become a trap when after they are underway, the charges are amended on the basis of testimony of the accused. Id. at 551.

The *Ruffalo* Court further explained that "no one knows" "[h]ow the charge would have been met had it been *originally included* in those leveled against the petitioner" by the disciplinary commission. Similarly, here, because the charge was not in the OSCs, Respondents did not have any opportunity to answer the charge of attempted larceny by extortion by allegedly threatening under NYPC 115.05(e) to "accuse [Sater] of a crime" or to "expose a secret" that would harm Sater. (Lerner Order, 38; Oberlander Order, 36.) Thus Respondents were denied their due process right to "fair notice of the charge." *Ruffalo*, 390 U.S. at 550; *see also Peters*, 642 F.3d at 387-90

(attorney denied due process right to notice where allegation was not raised until the third of five days of hearings and was not explicitly characterized as a charge).

What the OSCs allege is that Oberlander "repeatedly threatened the public dissemination of the Sealed Materials unless Defendants agreed to a monetary settlement" (Oberlander OSC, 3), and then charge that he violated Rule 3.4 by "knowingly engaging in illegal conduct by contravening court orders, disclosing the Sealed Materials, and attempting to obtain a settlement by *threatening further illegal conduct*." (Oberlander OSC, 6; Lerner OSC, 6). Lerner's OSC also charges him with violating Rule 1.16 by representing Oberlander "despite knowledge of Oberlander's intentions to obtain a settlement by threatening *illegal conduct*." The phrase "illegal conduct" cannot be constitutionally sufficient notice that Respondents were being charged with committing the specific crime of attempted larceny by extortion under the NYPC.

As Respondents did not have notice of the charge of attempted larceny by extortion, they were denied opportunity to be heard and to have a full and fair opportunity to litigate the issue. As with the entire proceedings, they were entitled on the attempted larceny charge to an evidentiary hearing (as the facts are disputed) to call witnesses, testify on their own behalf, and confront their accusers. Yet they were not able to raise any defenses or submit any response to the attempted larceny charge. The following are some, but by no means all, of the legal and factual defenses that Respondents now assert (and would have asserted had they received fair notice) as to the attempted larceny by extortion charge. Importantly, Respondents have had less than two weeks since learning of the charge of attempted larceny by extortion and are limited to 25 pages and no affidavits. They request full opportunity to respond to this charge, including an evidentiary hearing.

In the Orders, the Committee cited and summarized the NYPC, stating that "larceny by extortion" is "any act inducing another to deliver property by instilling a fear that, should the property

not be surrendered, the actor will take some action to harm the victim, including but not limited to: (1) **accusing the victim of a crime;** and (2) **exposing a secret that will harm the victim's reputation, career, and/or personal relationships**, or otherwise **subject the victim to hatred, contempt or ridicule**." (Oberlander Order, 38.) The Committee then found Respondents guilty of misconduct for "**threatening to disseminate the Sealed Materials unless Sater and the other defendants in the Southern District action agreed to a monetary settlement**." (Lerner Order, 38; Oberlander Order, 36). Oberlander is found to have made the threats, while Lerner is said to have "knowingly assisted [him] in threatening to disseminate the Sealed Materials." (*Id.; see also* Lerner Order, 40 ("demanding settlement under threat of revealing information that will harm the subject is *attempted larceny by extortion*")) Lerner is also disciplined under Rule 1.16(b) for "failing to withdraw when he learned that Oberlander was extorting a settlement from the Southern District defendants: threatening to disseminate the Sealed Materials if they did not agree to his terms," referencing the section of the Order regarding attempted extortion. (Lerner Order at 31)

### b) Oberlander Did Not Threaten Dissemination of Sealed Materials

Based entirely on two settlement letters sent by Oberlander to Mr. Herman in October and November 2010, the Committee found that Respondents committed attempted larceny by extortion by "threatening *to disseminate the Sealed Materials*" unless Sater *et alia* agreed to a monetary settlement (Lerner Order, 38; Oberlander Order, 36). The Committee defined the term "Sealed Materials" as Sater's cooperation agreement and financial statement, the two proffer agreements, and the PSR. (Lerner Order, 5.) Yet the two letters identified in the OSCs were **not** the only communications between Mr. Oberlander and Mr. Herman during the pendency of the Standstill

Agreement relating to settlement. Had Respondents known that they were being charged with attempted larceny by extortion, they would have submitted further correspondence indicative that they were **not** threatening to disseminate the allegedly Sealed Materials.

For example, attached to the October 18, 2010, letter was a copy of a proposed complaint that had **redacted from it all material allegedly under seal**. As the October letter explains:

> The attached redacted 'complaint' is for immediate dissemination, not service, upon all defendants to incent them into settlement discussions without the necessity for blowing this all up publicly. First, allegations which quote from or describe the contents of the PSR, complaint proper, information or cooperation agreement will be blacked out in standard redaction typeface. For your review, they are shown now as strike-through gray highlighted font. (2010.10.18 Letter to Herman, 2.)

These redactions were being made by Mr. Oberlander in compliance with ¶ 2.C of the Standstill Agreement, which said that the parties "shall promptly meet and confer in good faith concerning the redactions [to the Kriss I Complaint]" and that the "redacted version . . . **shall not include the Documents as exhibits and shall not include references to, quotations of or information derived from the Documents**." (08/12/2010 Standstill Agreement.)

Thus the redacted Complaint also did **not** have attached as exhibits any of the allegedly Sealed Materials. Other correspondence with Mr. Herman—which Respondents would readily proffer to the Committee—show the discussion that took place regarding preparing the redacted Complaint. For example, in a letter dated August 17, 2010, Oberlander explained why alleging Sater's cooperation was relevant to his client's claims, but then offered "as an accommodation to get this thing resolved I am willing in the quiet period **to redact from the Complaint all allegations of cooperation but leave in non-inflammatory allegations of the conviction**." (Emphasis in original.) The letter also explains that Oberlander was aware of Sater's conviction and his role as a

cooperator—based solely on public documents—and had alleged those facts in earlier drafts of the complaint pre-dating Bernstein even giving him the Sater Criminal Documents.

Although the October 2010 letter predicts great public interest in the allegations of hundreds of millions of dollars of financial fraud in the development of major Trump properties as still alleged in the proposed redacted *Kriss I* Complaint, Oberlander was not threatening to publicly disseminate the allegedly Sealed Materials.

The November 2010 letter must be understood in context—which an evidentiary hearing would allow. See *Peters*, *supra*. Judge Glasser had indicated in conference with the attorneys that he would be unsealing the documents. Thus Oberlander states in the letter, "If you don't stipulate I'll get it so ordered anyway because (as Judge Glasser himself pointed out) the issue of dissemination is moot." It is in this context that Oberlander predicts "*lawful and legal* worldwide dissemination"—as any dissemination would be *after* Glasser ordered it unsealed and especially where, as that same letter makes clear (also see supra), Oberlander notes that Judge Buchwald herself is likely to order the proposed redacted complaint public on PACER, where he predicts the press will find it and run with it.

c)   *It Is Not Larceny By Extortion to Threaten to Accuse a Person of A Crime When The Crime Did Occur and Defendant Seeks Redress for the Wrong*

The Committee indicated that attempted larceny by extortion under NYPC had been committed because Respondent was threatening either (or both) to "accus[e] the victim of a crime" or expose a harmful secret. As to accusing a victim of a crime, there is a statutory affirmative defense found in NYPC 155.15, that says that "it is an affirmative defense that the defendant reasonably believed the threatened charge [of crime] to be true and that his sole purpose was to compel or induce the victim to take reasonable action to make good the wrong which was the subject of such

threatened charge." Here, Oberlander and Lerner certainly had "reason to believe" that Sater had committed the racketeering crimes at Bayrock because Kriss himself had verified the complaint.

In fact, as Lerner's motion notes, the New York Court of Appeals has held that this cannot be applied as an affirmative defense as it would shift the burden of proof unconstitutionally; thus the Committee would have to have found, if it found that there was a threat of accusation of a crime, that the complaint that started all this, the *Kriss I* RICO complaint, was basically a sham.

Oberlander was representing victims of Sater's crimes and was seeking to "compel or induce" Sater to "make good the wrong." Although the Committee makes much of Oberlander's demands for the proposed settlement of "$32,000,0000," and "one billion dimes"—which is $100,000,000 dollars—the letters explain the basis for these as non-extortionate compensation to which Oberlander's clients were legally entitled. The *Kriss I* complaint deals with fraud in the development of Trump properties worth hundreds of millions. As the October 2010 letter says:

> Plaintiffs have pled and will well present a case for the jury award of damages of approximately $105,000,000, exclusive of prejudgment interest and attorneys fees and exclusive of other legal and equitable remedy. This includes trebling as provided by 18 USC § 1964(c). . . . This is based on our estimate of actual damages of $35,000,000 and includes assumptions as to available abatements of certain potential penalties and interest. We will provide a statement of damages on request or at the first settlement meting, but for now understand that this figure of actual damages in very large part, other than as to those penalties and interest, represents the value of Plaintiffs' interests in Bayrock in 2007 at the time they were, in a word, stolen as part of the racketeering and state law wrongs. They are based on Plaintiffs' entitled share of the projected proceeds of Bayrock as Bayrock itself computed and disseminated in 2007. (2010.10.18 Letter to Herman, 1.)

The letter then discusses caselaw supporting this figure. (*Id.*) Oberlander is seeking redress of the actual damages caused to his clients (the $35,000,000 figure), along with their legal right to trebling (the $100,000,000 figure).

    **d)**   *Oberlander's Clients Had a Good Faith Legal Claim to Damages of $32,000,000, Plus Potential Trebling, and Thus the Demands Were Not Wrongful or Extortionate*

The crime of larceny by extortion in New York requires an element of "wrongfulness." The New York Court of Appeals has explained "The essence of the crime [of extortion] is obtaining property by a *wrongful* use of fear, induced by a threat to do *an unlawful injury*." *People v. Dioguardi*, 8 N.Y.2d 260, 268 (1960) (emphasis added); 6 N.Y. Practice, Criminal Law §12:9 (4th ed.). Thus, the New York Court of Appeals long ago observed:

> It is doubtless true that a demand for indemnity for a wrong, made in good faith, accompanied by a suggestion that legal proceedings will be resorted to unless satisfaction is voluntarily made is not a threat within the statute, although the wrong is one the disclosure of which would bring disgrace upon the guilty party. *People v. Wightman*, 104 N.Y. 598 (1887).

Here, Oberlander demanded indemnity for a wrong—and in good faith demanded monetary damages to which his clients were entitled under law, as noted. The publicity he indicated would arise from the lawsuit was a consequence of the filing of legal proceedings. That is *not* extortion.

In the same vein, the Second Circuit upheld the following jury instruction as to wrongfulness in an extortion trial under the Hobbs Act (which is modeled on the NYPC):

> "Wrongful" means that in order for you to find that any of the acts of extortion alleged in these counts were, in fact, committed, you must find beyond a reasonable doubt that the defendant or defendants you are considering **had no lawful right to the property** obtained, and that the property was obtained because of the victim's fear of economic loss. *U.S. v. Clemente*, 640 F.2d 1069, 1077 (1981).

More recently, in *United States v. Jackson*, the Second Circuit explained that "a threat to cause economic loss **is not inherently wrongful**; it becomes wrongful **only when it is used to obtain property to which the threatener is not entitled**." Again, Oberlander's October 2010 letter discloses his clients' lawful rights and entitlement to the property that he demanded. His letter

included a basic statement of how the damages were calculated and offered to provide a full calculation of damages. And of course the RICO complaint itself exhaustively documented damages. Respondents did not engage in attempted extortion as Oberlander only demanded money as to which his clients were legally entitled—and thus the wrongfulness element of extortion is not met.

### e) Threatening to Reveal the "Secret" of Sater's Conviction or Cooperation Was Not Extortion by Larceny

The Committee additionally relied on the definition of larceny by extortion under the theory that Respondents sought a monetary settlement by threatening to "expos[e] a secret that will harm the victim's reputation, career, and/or personal relationships, or otherwise subject the victim to hatred, contempt or ridicule." (Oberlander Order, 36). As noted, even revelation of an embarrassing or harmful secret is not extortionate *if it is not wrongful*. Thus in the *Jackson* case, Bill Cosby's illegitimate daughter threatened to disclose his extra-marital affair with her mother and sell it to a tabloid unless Cosby agreed to give her $40 million dollars. The Second Circuit reversed the conviction and ordered a new trial because the district court had incorrectly instructed the jury that "to extort means to obtain money or a thing of value from another by use of threats to reputation." *Jackson*, 180 F.3d at 71. The court explained that the jury was thus given the incorrect view that "any and every threat to reputation in order to obtain money is inherently wrongful." Instead, the trial court should have "limit[ed] the scope of that term [extort] to the obtaining of property ***to which the defendant had no actual, or reasonable belief of, entitlement***." *Id.* at 71-72.

In a case more similar to this one, an attorney wrote a prelitigation demand letter in which he provided a draft complaint alleging that the defendants had embezzled money from clubs and restaurants they owned, and used some of that money to "arrange sexual liaisons with older men," including a judge. The draft complaint left blank spaces for the names of the sexual partners, and

stated that if settlement wasn't achieved within 5 days, the attorney would file the complaint and the blanks would be filled in (and thus publicized). The California appellate court held that the demand letter could not be extortionate because "the 'secret' that would allegedly expose [the defendant] and others to disgrace was ***inextricably tied to [the] pending complaint***" as "[t]he demand letter accused Malin of embezzling money and simply informed him that [the plaintiff] knew how he had spent those funds." *See Malin v. Singer*, 217 Cal. App. 4th 1283 (2013). Here, the hiding of Sater's conviction and his membership interest in Bayrock is inextricably tied to the RICO claims made in the *Kriss I* Complaint. As the Second Circuit in *Jackson* explained—where a person is actually entitled to the money (as Oberlander's clients were), a threat to reputation to obtain that money can only be extortionate "if the threat has no nexus to the defendant's claim" to the money. *Jackson*, 180 F. 3d at 71. Sater's conviction and cooperation had a nexus to the *Kriss I* plaintiff's claims to compensation from him, which were based in part on being defrauded by the concealment of that conviction. Thus even if there was a threat to reveal his conviction in the Complaint, it would not be extortionate.

### f)  *Sater's Conviction and Cooperation Cannot Be A "Secret"*

As a factual matter, Respondent asserts that Sater's conviction and cooperation (although hidden for years from business partners like Jody Kriss and from Bayrock investors and lenders), cannot be a secret. As submitted to this Committee, the National Archives has confirmed that Sater's criminal file was sent to it unsealed and available to the public, as was Lauria's and Klotsman's, and Lauria's for one contained a letter written in 2002 by the EDNY USAO which identified Sater as a cooperator ***and which has been public there in the archives for 14 years now***.

And Judge Glasser, in an order sent to the United States Supreme Court that Sater **had been sentenced *"in an open courtroom."*** ((2013.03.13 Glasser Order at 1.) Glasser repeatedly asserted that there Glasser stated himself that there was **"no formal [sealing] order"** in the case, and that he could not find an application for sealing, **"[nor] have I been able to find any order signed by me which directed that this file be sealed."** (2010.06.14 Glasser Transcript 5:6-7, 5:24; 2010.07.20 Glasser Transcript 17:4-11.) Joseph Giannini testified that all of the co-conspirators in *Coppa* knew and were informaed by the Government that Sater was a cooperating witness. The government itself disclosed in a March 2000 press release Sater's conviction, stating "As alleged in the indictment, ***the schemes were led by*** defendant John Doukas and Walter Durchalter, ***together with*** Gennady Klotsman, Salvatore Lauria and ***Felix Sater***, who collectively controlled White Rock and State Street"—with a footnote, stating "Klotsman, Lauria and ***Sater have previously pleaded guilty to RICO charges*** in connection with their activities at White Rock and State Street." (*See* ORGANIZED CRIME ON WALL STREET, House Hearing, Sept. 13, 2000, at 195 & n.2, *at* https://www.gpo.gov/fdsys/pkg/CHRG-106hhrg67115/pdf/CHRG-106hhrg67115.pdf.).

Moreover, this Committee asserts that public dissemination "would expose Sater to retaliation from individuals and organizations about whom he was providing information, as well as to public humiliation." (Oberlander Order, 38). The Committee has the burden to prove disciplinary charges by clear and convincing evidence. No evidence was included in the Orders that Sater was actually threatened or exposed to retaliation from specific individuals or organizations once his conviction became public (for example, after Glasser unsealed the transcript and most of his criminal file). Further, the claim of potential retaliation from his co-conspirators is completely belied by the testimony in the Giannini Affidavit that all of Sater's co-conspirators were aware and informed of Sater's cooperation at the time of their criminal prosecutions. Finally, the government

itself stated that it "has no information that any person has sought to harm the defendant [Sater] or his family since the press release" of March 2000 identifying him by name and his conviction. ((2011.03.17 Government's Letter Motion, 5.)

And in any event the New York criminal code makes clear that if extortion be based on a threat of harm, it must be a threat of harm to be caused by the extortionist himself, not by some third party not within his control, which would basically be an attempt to make him liable for the violent acts of others, which constitutionally, by Brandenburg and even Schenck, would require the specific intent to incite others to imminent lawless violence.

### g) Neither Oberlander Nor Lerner Had the Specific Intent to Attempt Larceny By Extortion and Lerner Engaged in No Act in Furtherance Thereof

The Committee found that Respondents committed attempted larceny by extortion, citing NYPC 110.00 for the crime of attempt. Attempt is a specific intent crime. Thus, as the New York Court of Appeals has explained:

> [I]t must first be established that the defendant acted with a specific intent; that is, that he intended to commit a specific crime. It is not enough to show that the defendant intended to do some unspecified criminal act. Secondly it must be proven that the defendant acted to carry out his intent. People v. Bracey, 41 N.Y.2d 296, 300 (1977).

The Committee cited absolutely no evidence that Respondents had the specific intent to commit the specific crime of larceny by extortion. The finding as to Oberlander's intent is based on the fact that "he is an experienced lawyer with multiple degrees" and thus allegedly "knew" that "public dissemination of obviously sensitive documents . . . would expose Sater to retaliation from individuals and organizations about whom he was providing information, as well as to public humiliation." But the Committee presented no evidence that this was true and that *Oberlander knew* any of this. Moreover, even if he did know that, it would be insufficient for the specific intent

to commit larceny by extortion, because larceny by extortion requires that the threat be wrongful, as discussed above. Thus Oberlander would have to specifically intend to obtain property from Sater by "a wrongful use of fear"—by using threats (unrelated to his client's claims for relief) to obtain money as to which his clients have no basis for claiming a legal entitlement. Finally—on top of the above--the Committee could not make on paper submissions the requisite determination of Oberlander's *mens rea*; specific intent is a quintessential question of fact. And again, the statute in New York only applies to a threat of harm to be perpetrated by the extortionist himself.

As to Lerner, the Committee found that because Lerner conceded he "was aware" of the letters (at the time of the letters, Lerner did not represent anyone in the *Kriss I* action—only Oberlander did), his intent was "inferable" because he "does not claim ignorance of Oberlander's threatening letters, or say he did not assist Oberlander in sending the letters, in his submission." (Lerner Order, 40.) The Committee has the burden to prove by clear and convincing evidence that Lerner had the affirmative *mens rea*—the specific criminal intent to commit larceny by extortion— and their only evidence is that Lerner was aware of the letters and he ***failed to say that he did not assist*** with them in his written submission. His submission was made when Lerner had no idea that he would be charged with attempted larceny by extortion. The utter absence of evidence regarding Lerner's actual state of mind—his *mens rea*—means that the Committee failed to meet its burden of proof on this charge; it does not mean that Lerner can be inferred to have had the requisite *mens rea* by his failure to either confirm or deny it. Further, merely being aware of another person's actions is not specific intent to commit a crime. If I am aware that someone is breaking into my neighbor's house (because I see them across the street), that does not endow me with the specific intent to burglarize my neighbor's home.

To be guilty of attempt, a person must not only have the specific intent to commit the crime, but also must take an affirmative act in furtherance of the crime because "the law does not punish evil thoughts." *Bracey*, 41 N.Y.2d at 300. The Committee cites no evidence that Lerner performed ***any act*** related to the alleged attempted extortion. He was merely aware of the letters. To punish him for awareness without action would be to "punish evil thoughts." *Id.*

Additionally, the Supreme Court has held that for extortion made by verbal threats (which raises First Amendment problems), "what [the threatener] thinks does matter"—and thus there must be an "evil intent *actually existing* in his mind." *Elonis v. U.S.*, 135 S.Ct. 2001, 2011 (2015) (internal citations omitted; emphasis added). That a reasonable person would think something is a threat is insufficient to show a culpable state of mind. *See id.*

WHEREFORE THE ABOVE, Respondent prays for the relief set forth herein.

April 7, 2018
Montauk, New York

/s/ Frederick M. Oberlander
*Respondent pro se*