UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In the Matter Of,                                    Docket No. 16-MC-2637

FREDERICK M. OBERLANDER, an attorney
admitted to practice before this Court,

               Respondent.

-------------------------------------------------------------------X

# MEMORANDUM OF LAW

### In Support Of

### Respondent pro se's *Unopposed\** Emergency Application For an Order to Show Cause To Stay His Suspension from Practicing Law in This Court

**PRELIMINARY STATEMENT**

Respondent Movant Frederick M. Oberlander submits this memorandum in support of his ***unopposed\**** motion for a stay per FRCP 62 pending outcome of his motion per FRCP 60 and LR 6.3 for reconsideration of this Court's August 13, 2018 Order suspending him from practicing law in this district for a period of one year commencing September 1, 2018.

\*[Respondent yesterday, August 28, 2018 spoke by telephone with James Wicks, Esq., who was appointed by the Committee to assist with the grievance. Mr. Wicks confirmed that Respondent may represent to the Court that ***he does not oppose the requested relief***.]

Respondent will suffer irreparable harm if his suspension is permitted to begin while his motion is pending. He will be deprived of ability to earn a living as a solo practitioner, first here, then to the extent his suspension triggers reciprocal disciplinary proceedings in other fora, where will have great difficulty defending himself because the record in this case is sealed.

Further, Respondent's suspension and reciprocal discipline will cause his clients to suffer serious prejudice because he represents several with imminent deadlines before the United States Court of Federal Claims, New York State Supreme, Surrogate's, and Appellate Division courts

Moreover, some of these clients are on contingency, one is pro bono, and they, especially the latter, will have great difficulty replacing Respondent.

Critically, the above consequences could occur while Respondent's motion under FRCP 60 and Local Rule 6.3 is *sub judice*. Thus, Respondent and his clients will suffer serious harm, even if his motion is ultimately successful. Under the unique circumstances as set forth more fully below, the Court should stay enforcement of the Order suspending him from practice before this Court pending the outcome of said motion.

If the instant application is denied, it is requested that this Court grant a 10-day stay to allow Respondent to present an application for a stay 5o the Second Circuit.

## BACKGROUND

In November 2016, the Committee ordered Respondent to show cause why it should not impose discipline pursuant to LR 1.5. Respondent was charged with these RPC violations: (1) Rule 3.1, by filing multiple frivolous appeals and bringing frivolous lawsuits; (2) Rule 3.2, by engaging in improper dilatory tactics; (3) Rule 3.3, by engaging in undignified and discourteous conduct toward the courts; (4) Rule 3.4, by knowingly engaging in illegal conduct by contravening court orders, disclosing Sealed materials, and attempting to obtain a settlement by threatening further illegal conduct; (5) Rule 8.4(a), by violating multiple New York RPC Rules; (6) Rule 8.4(h), by engaging in conduct that adversely reflects on his fitness as a lawyer; and (7) Rule 8.4, by engaging in conduct that is prejudicial to the administration of justice.

Respondent made submissions showing why the Committee should not impose discipline and, alternatively, should conduct an evidentiary hearing to present witnesses and other evidence relating to the defense of these Charges. [Lerner 16-MC-2636 Doc. #s 18, 19, 24 & 25].

By Order of August 13, 2018, the Committee concluded that Respondent violated RPC Rules 3.3(f)(2), 3.4(a)(6), 8.4(a), 8.4(d), and 8.4(h) [Order pp 1-2]. This Committee deferred ruling on the charge that Respondent knowingly engaged in illegal conduct in violation of RPC 3.4 by contravening court orders and disclosing sealed materials, because Respondent is the subject of a criminal investigation [Order, p. 2]. The Committee ruled that no facts were in dispute, so no evidentiary hearing was held. The committee suspended Respondent from the practice of law in the Eastern District for one year commencing on September 1, 2018.

Respondent moved under FRCP Rule 60(b)(6) and LR 6.3 to reconsider or reargue that Order under *In re Ruffalo*, 390 U.S. 544, 551 (1968) and *In Re Peters*, 642 F.3d 381 (CA2 2011), as denial of an evidentiary hearing can be, and Respondent argued in the facts of this case was, a denial of the requisite process due in attorney disciplinary matters, because the Committee erroneously determined that the facts in the record are not in dispute when they were adamantly disputed and in any event involves issues of credibility and culpable state of mind that should not have been determined on papers, Respondent thus denied the opportunity to examine witnesses, issue subpoenas, testify in his own behalf, and confront his accusers.

Due Process was further denied because the charges failed to provide the constitutionally required notice that the Committee might (as it did) charge (and "convict") Respondent with commission of attempted larceny by extortion under New York Penal Code §§ 100.00 and 155.05(2)(e) as the basis for finding a violation of New York Rules of Professional Conduct Rule

3

3.4. Respondent was denied opportunity to present legal and factual defenses thereto, and again denied an evidentiary hearing and the opportunity to present witnesses and confront his accusers.

Respondent respectfully requests request that this Court consider the related legal principle that disciplinary proceedings are considered "quasi-criminal" in nature. *Id*. Also see *Gerzof v. Gulotta*, 87 Misc.2d 768, 775 (Sup. Ct. Nassau Co. 1976),modified on other grounds, 57 A.D.2d 821 (1st Dept.), appeal dismissed, 42 N.Y.2d 960 (N.Y. 1977).

It is well-established principle that a disciplinary proceeding is a quasi-criminal proceeding because New York's Rules of Professional Conduct permit severe and stigmatizing sanctions that, in effect, deprive an attorney of the liberty to practice his chosen profession.

*See, e.g., Willner v. Committee on Character and Fitness*, 373 U.S. 96, 103-06 (1963); *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238-39 (1957); *Charlton v. FTC*, 543 F.2d 903, 906 (D.C. Cir. 1976); *In re Ming*, 469 F.2d 1352, 1355 (7th Cir. 1972).

Here of course the problem runs deeper, as the Committee says that it found by clear and convincing evidence that Respondent engaged in a serious felony during his practice of law.

Disciplinary proceedings are considered "quasi-criminal" in nature, and attorneys in such proceedings are "accordingly entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. at 550-52 (reversing attorney's federal disbarment because he had been denied procedural due process); see also *In re Charges of Unprofessional Conduct Against N.P.*, 361 N.W.2d 386, 394 (Minn. 1985) ("[t]here is no question that attorneys subject to disciplinary investigations are entitled to due process[, which] includes adequate notice"), appeal dismissed, 474 U.S. 976 (1985); *Sakon v Andreo*, 119 F.3d 109, 114 (2d Cir 1997) ("before the court imposes 'any kind of sanctions,' it must afford the person to be sanctioned due

process....'Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record'"; internal citations omitted). Fair notice is the sine qua non for the imposition of any attorney discipline.

And, reconsideration is warranted as this Committee overlooked facts and law in finding that Respondent violated the RPC and in finding that no evidentiary hearing was required.

Respondent now moves by order to show cause under LR 6.1(d) for an order staying enforcement of the order suspending him, pending outcome of his motion for reconsideration.

## ARGUMENT

**Letting Respondent's Suspension Begin While a Quite Meritorious Motion for Reconsideration Is Pending Will Devastate His Ability to Earn a Living, Trigger Procedurally and Substantively Opaque Reciprocal Disciplinary proceedings, and Prejudice His Innocent Clients**

### A. General Legal Principles

FRCP 62(b)(4) allows a court to stay the execution of a judgment, or any proceedings to enforce it, pending disposition of a motion "under Rule 60, for relief from a judgment or order."

A court must consider four factors in ruling on a FRCP 62 motion to stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. The most crucial is whether the moving party will suffer irreparable injury unless a stay is granted. *United States v. State of Louisiana*, 815 F.Supp. 947, 953 (E.D. La. 1993).

Further, under LR 6.1(d), a party moving by "order to show cause to bring on a motion" must submit "a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previous application for similar relief has been made."

Applying the foregoing criteria to this matter, the Respondent's motion for a stay should be granted.

### B. This Court Should Stay of Respondent's Suspension Pending Reconsideration

*(i)    Likelihood of Success of the Motion for Reconsideration*

Respondent has a strong case for reconsideration as he did not receive an evidentiary hearing, as required by due process. This Committee held it did not need to hold such hearing on the theory that "the facts in the record underlying the Committee's findings are not in dispute." (Order 2). In his FRCP 60 and LR 6.3 motion, Respondent showed that he had strongly disputed key facts. For example, as noted in Prof. Tarkington's Report and Supplement [TR 16-mc-2636 Doc. #s 19, 25], the fact of any proper sealing of Sater's docket is disputed; Judge Glasser said repeatedly there was "no formal [sealing] order"; the National Archives confirmed that Sater's file arrived unsealed and publicly available and remained public there for the better part of a decade, along with supposedly sealed files of co-defendants and cooperators Salvatore Lauria and Gennady Klotsman, which remain public there still; Glasser told the Supreme Court Sater was sentenced in open court (transcripts show his real name used and the fact and details of his cooperation were read aloud); and the government acknowledged it. [TR Doc. # 25]. And, Judge Glasser acknowledged there was no sealing order [TR 10-11, Doc. #s 19 & 13, Ex. 9].

The Court also found that Sater's file "stated explicitly that they were sealed" and that

Oberlander was aware that the documents were sealed. But at the June 21 hearing, Oberlander testified that nothing on any of the Sater Criminal Documents stated or indicated they were subject to a sealing order or otherwise under seal [TR 11, Doc. #s 19 & 13, Ex.10]. The documents themselves confirm this: there are no markings indicating documents were "sealed." The Respondent disputed several other key facts and itemized other facts that the Committee overlooked. Thus there is a likelihood of success on the merits of the motion for reconsideration.

    (ii)    *The Respondent will be Irreparably Injured Absent a Stay*

This Court suspended Respondent from practicing law before it for one year commencing September 1, 2018. "To most persons who enter the [legal] profession, [practicing law] is the means of support to themselves and their families." *Bradley v Fisher*, 80 US 335, 355 (1871). "To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family." *Bradley*, 80 US at 355. "The stigma" of temporarily losing a license to practice law "can harm the lawyer in his community and in his client relations as well as adversely affect his ability to carry out his professional functions" even after the suspension has ended. *See Erdmann*, 458 F.2d at 1210.

The threat to Respondent's livelihood here is no less significant. Respondent's only career for the last 20 years has been that of a practicing attorney. He runs a solo practice and does not have any other source of income. Though he practices before other courts, a suspension before this Court will almost certainly lead to reciprocal disciplinary proceedings in those other jurisdictions where he is admitted, such as the United States Court of Federal Claims, *see* Rule 83; the Court of Appeals for the Second Circuit, *see* Second Circuit Local Rule 46.1(b)(2)(iii); the

United States District Court for the Southern Districts of New York, *see* Local Rule 83.3(b); and the State of New York, *see* 22 N.Y.C.R.R. § 1240.13.

Moreover, permitting Respondent's suspension to begin on September 1, 2018 will severely prejudice his defense in reciprocal disciplinary proceedings. His disciplinary proceeding in this Court has been sealed, potentially precluding him from relying on the very documents that can establish his defense in a reciprocal disciplinary proceeding, for example to establish the second of the *Selling* factors, viz. evidentiary insufficiency. This will increase the chances of discipline being imposed in those reciprocal proceedings. Without his ability to practice law in those jurisdictions, Respondent will not be able to generate income from practice, a particularly heavy burden for a solo practitioner to bear.

In short, a one-year suspension would devastate Respondent's ability to earn a living.

In addition, as noted permitting Respondent's suspension to begin on September 1, 2018 would also disrupt efficient administration of justice in other cases where Respondent represents clients with imminent deadlines before courts that are likely to commence reciprocal disciplinary proceedings. Respondent's clients would be severely prejudiced by having to substitute counsel at this late stage, especially those who are *pro bono* or on contingency.

Respondent is also counsel in a litigated cross-border estate in New York Surrogate's Court, as well as other highly complex tax matters, and Respondent has unique knowledge of these case, especially the cross-border and cross-currency aspects as they effect complex financial instruments. Substituting a new attorney at this stage due to a reciprocal suspension would be costly, time-consuming and prejudicial to Respondent's clients.

Under such circumstances, the Court should temporarily stay the order suspending him from practice while his motion under FRCP Rule 60 and LR 6.3 to reconsider is pending. Indeed, even if that motion eventually succeeds, Respondent will still suffer significant harm without the present requested relief, for while he timely filed that motion on August 27, 2018, his suspension begins September 1, 2018, and that motion is unlikely to be decided within four days, thus reciprocal discipline and withdrawal from pending matters with imminent deadlines could also occur while the FRCP 60 and LR 6.3 motion is pending.

Respondent can readily be deprived of his ability to earn a living while the motion is pending. These consequences affect not only him, but his family and clients

*(iii)    Issuance of the Stay will Not Substantially Injure Any Other Party*

James Wicks, the attorney assigned to investigate allegations against the Respondent and advise the Committee on Grievances whether prosecution of a disciplinary action is required, expressly confirmed that he did not oppose the relief requested.

*(iv)    Public Interest*

While it is beyond cavil that attorney discipline is protection of the public[1], no public interest is implicated in this request, as the circumstances leading to discipline are not likely to recur in any other place or at any other time, and Respondent represents no threat to the public.

---

[1] New York Federal and State Courts have emphasized that in imposing attorney discipline, the "primary focus must be on protection of the public. 'Our duty ... is to impose discipline, not as punishment, but to protect the public.'" *Levy v. Assn. of the Bar of City of New York*, 37 N.Y.2d 279, 281-82 (1975), quoting *Matter of Kahn*, 38 A.D.2d 115, 124 (1st Dept. 1972), aff'd, 31 N.Y.2d 752 (other citations omitted); *Matter of Rowe*, 191 A.D.2d 636, 638 (2d Dept. 1993) (same), citing and quoting Kahn, supra; *Matter of Singer*, 290 A.D.2d 197, 199-200 (1st Dept. 2002) ("the purpose of a disciplinary proceeding is not to punish the respondent [attorney] but rather, to determine the fitness of an officer of the Court and to protect the courts and the public from attorneys unfit to practice"); *In re Nearing*, 16 A.D.2d 516 (1st Dept. 1962)

## CONCLUSION

This Court, per FRCP 62, should stay enforcement of this Court's August 13, 2018 Order pending resolution of the FRCP 60 and LR 6.3 motion and award any other just and proper relief. If this request is denied, it is asked that the Court grant an interim 10-stay to allow time to ask the Second Circuit for a stay. No prior same relief has been requested save for a request embedded in the FRCP 60 and LR 6.3 motion, which Respondent withdraws as he was first told yesterday, after it was filed, that Judge Donnelly cannot hear that motion in time as she is on vacation.

Dated: Montauk, New York　　　　　　　　　　　　　　/s/ Frederick M. Oberlander
　　　　August 29, 2018　　　　　　　　　　　　　　　　*Respondent and Movant pro se*

---

(same); *In re Hochbaum*, 649 F. Appx. 80, 84 (2d Cir 2016) ("Attorney disciplinary proceedings are intended to protect the public and the administration of justice from attorneys who fail to satisfy their professional obligations to clients, the public, and the legal system."); *In re Peters*, 2013 U.S. Dist. LEXIS 60722, *211-12 (S.D.N.Y. Jan. 23, 2013) ("It has been said that 'the primary purpose of attorney disciplinary proceedings is the protection of the public … as opposed to punishment.'"), quoting *Matter of Abady*, 22 A.D.3d 71, 80 (1st Dept. 2005), and citing see also A.B.A. Standards for Imposing Lawyer Sanctions, § 1.1 (1991 ed.) ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."); see also *In re Jaffe*, 585 F,3d 118, 121 (2d Cir. 2009) (discussing, generally, where lawyer's ability to practice law should be "barred as a corrective measure in order to protect the public, other attorneys and litigants, the Court, and the administration of justice"), citing see *Theard v. United States*, 354 U.S. 278, 282 (1957) ("The power of disbarment is necessary for the protection of the public in order to strip [an attorney] of the implied representation by courts that [an attorney] who is allowed to hold himself out to practice before them is in 'good standing' so to do."), and *Ex Parte Wall*, 107 U.S. 265, 288 (1883) ("The [attorney disciplinary] proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them."); *In re Guttlein*, 378 F. Appx. 24, 26-27 (2d Cir. 2010) (same), citing *Theard*, 354 U.S. at 282, and *Jaffe,* 585 F.3d at 121.