```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
```

| | |
|---|---|
| In the Matter Of<br>**FREDERICK M. OBERLANDER**,<br>An Attorney Admitted to Practice in This Court,<br>    Respondent. | 16-MC-2637 (AMD)<br><br>**Motion for Stay Pending Appeal**<br><br>**Oral Argument Requested** |

```
---------------------------------------------------------------X
```

    I, Frederick M. Oberlander, moving per FRCP § 62(a)[1] to stay imposition of discipline pending appeal to the Second Circuit, and possibly the United States Supreme Court, affirm at penalty of perjury per 28 USC § 1746 that the facts averred below are true to my best knowledge. Please note that I wasn't served with, or otherwise notified of, the underlying October 24, 2018 order triggering this for 5 days after it issued. This motion has been filed as soon as possible with that delay. I ask it not be held against me.

| | |
|---|---|
| /s/ Frederick M. Oberlander | Dated: Montauk, New York<br>November 7, 2018 |

## INTRODUCTION

    1.    On August 13, 2018, the Committee on Grievances for the United States District Court for the Eastern District of New York issued an Order suspending me from the practice of law in the EDNY for one year, and suspending Richard E. Lerner for six months, decreeing that both suspensions begin on September 1, 2018.

    2.    On August 27, 2018, I and Mr. Lerner timely filed motions for reconsideration and requested that, if reconsideration were denied, the court certify the

---

[1] 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2902, *Automatic Stay* ("No execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 14 days after its entry.") 14 days after the Court ordered entry of judgment on October 24, 2018, is November 7,.

Orders as final per FRCP § 54(b), so immediate appeal might be had, and on August 30, 2018, this court stayed suspension pending resolution of those motions.

3. On September 12, 2018, I and Mr. Lerner filed early notices of appeal, which per FRAP § 4 would take effect on entry of orders disposing of those motions.

4. On October 24, 2018, the court entered orders denying our motions to reconsider while granting our motions to certify under Rule 54(b), directing entry of final judgment upon finding no just reason for delay. Neither of us were served with or in any way notified, by ECF or other means, of those orders until October 29, 2018.

5. The notices of appeal became active and deemed filed upon that entry.

6. In my appeal, I will raise, as I did initially and on reconsideration, constitutional issues including, non-exhaustively, that I was denied due process.

7. **I was denied procedural due process** by the Committee's (a) failure to afford me evidentiary or argument hearings, abridging my rights to call witnesses, confront my accusers, and testify and advocate before the Committee; its (b) failure to notify me that I was being tried for attempted larceny by extortion per NY Penal Code §§ 110.00 and 155.05(2)(e), as a result of which I didn't respond as I would have; and (c) its reliance on and findings of fact, even as to knowledge and state of mind, which were and are disputed so couldn't have been decided as they were on paper record.

8. **I was denied substantive due process** by its punishment of me for engaging in constitutionally protected association, petition and expression for which, for example, per *Noerr-Pennington*, I could not, absent a predicate finding, meeting strict scrutiny standards, of utter lack of merit, be called on to answer for my motive.

*****

# ARGUMENT

9. It is the usual custom and practice of this court to consider four factors before deciding a motion for stay pending appeal.

(1) whether a non-moving party will suffer irreparable harm with a stay;
(2) whether movant will suffer irreparable harm absent a stay;
(3) any public interests that may be affected; and
(4) whether movant shows a *substantial possibility of success* on appeal. [2]

10. These factors clearly weigh in favor of a stay of pending appeal.

### *No non-moving party will suffer harm, let alone irreparable harm, if a stay is issued.*

11. The Committee's determination that suspension is an appropriate sanction will not be undermined if upheld on appeal even if a stay is issued because if I lose on appeal to the Second Circuit and the Supreme Court, I will still then be suspended for the time determined by the Committee following such appeal.

### *I will suffer irreparable harm without a stay, there is a substantial possibility of success on appeal, so outcome asymmetry compels a stay.*

12. I have been suspended for 12 months, which means that for all practical purposes I'll serve out my suspension, very likely entirely, in the process of appealing as of right to the Second Circuit and, if necessary, the United States Supreme Court. This is even more likely for Mr. Lerner, who has been suspended for 6 months.

13. Now, no attorney, no matter how remorseful, wants to be suspended. I presume this is apodictic of human nature, and it cannot be held as a sign of lack of

---

[2] *See Tumming v. Hamburg,* 936 F. Supp. 2d 198 (EDNY 2013) (relying on *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (CA2. 1993).

remorse that an attorney found to have committed misconduct still prefers the least suspension possible. Thus, we may say that the attorney's utility of outcome is strictly correlated with the length of suspension; the longer the suspension, the lower the utility, This must always be so no matter how just or unjust he believes his cause to be.

14. The Committee, on the other hand, surely will concede, as it must, that its interest begins and ends with imposition of *due* discipline on those attorneys who *deserve* it, to protect the public and the courts from them. But, though we accept that there are errors in human systems, *the Committee can have no interest in mistakenly disciplining an innocent attorney or over-disciplining a guilty one*. The Committee's utility *increases* with imposition of *due* discipline, but *decreases* with imposition of *undue* discipline (whether undue because of innocence or over-harshness).

15. So, with the proposition that final adjudication, after exhaustion of all appeal, of discipline *vel non* is by definition legally correct with *finality*, as opposed to the present *nisi prius* adjudication, which is *presumptively but not finally* correct, it may be clear why logic – and one hopes justice and humanity – compels a stay.

16. **If either appellate body finds the Committee in error and reverses**, without a stay I will have already suffered reputational harm from being suspended, severe loss of livelihood, and potential reciprocal discipline in other fora. A reversal on appeal would not undo these harms.

17. **If neither appellate body finds the Committee in error**, then with or without a stay I will suffer the same negative utility.

18. To me stay is optimal as w*ithout* one I always have negative utility even if discipline is reversed, but *with* one I have negative utility only if it is final.

4

19. **But his analysis is not true for the Committee**. At the moment, the Committee has a positive utility of outcome because it has imposed *presumptively* (but not *finally*) correct discipline. Its utility is the expectancy, the product of the likelihood that it will be finally held to have been right multiplied by the value of being right.

20. *If the Committee grants a stay, it optimizes its utility* as no discipline is imposed until appeals are exhausted, thus no discipline is imposed until what is now merely presumptively correct becomes finally correct. Thus, by allowing a stay the Committee allows appellate review to determine whether with definitional finality its imposition of discipline was correct, and if it was then the above computation is at it highest. as the likelihood of its being right will be definitionally 100%.

21. *At the same time, if after stay the Committee is reversed, then its utility is maximized again because it will not have imposed undue discipline.*

22. ***Surprisingly, each side wins, individually and collectively, with a stay***. Here's why: Imposition of discipline is quasi-criminal, so the process is not zero-sum. If this were commercial litigation, it would be zero-sum, the more plaintiff wins, the more defendant loses. But it is not commercial litigation. From the standpoint of the attorney it is, in a sense, because of his utility, the shorter the suspension the better. But assuming that it operates without vindictiveness or recrimination, the Committee, like any court or prosecutor, must be indifferent to possible later reversal, as reversal would, by definition, mean it had reached the wrong, so unfair and unjust, result and *that this error has been caught and corrected. In sum, the attorney wins his case when the least suspension is obtained, but the Committee wins its case when justice is done.*

23. *Therefore, granting a stay is required by the Committee's own ethos.*

24. *There is one thing more…A truly optimal result would be by negotiated settlement where both the attorney and the Committee recognize that* if the problem is changed from "take it or leave it, there will or won't be an appeal and will or won't be a stay" to "at what, if any, reduced discipline will each side feel its interests are best served by forgoing appeal and stay?" There may be such equilibrium, where neither side can improve the result, but when this was proposed to Mr. Wicks he said the Committee had rejected it, so the process now is strictly binary, appeal and stay or not.

### *There is a* **substantial possibility of success** *on appeal (cont'd).*

25. It's human to worry that asking the Committee to stay means asking it to find a substantial probability of success –, to find that it's likely to be overturned. But "substantial possibility of success" doesn't mean "more than 50%." The Second Circuit says, "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors," so a stay is appropriate even in cases "where the likelihood of success is not high but the balance of hardships favors the applicant…. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other."[3]

### *Deprivations of Due Process*

26. **Procedural**. Caselaw from the Supreme Court and Second Circuit is clear that in disciplinary proceedings, which are quasi-criminal, attorneys are entitled

---

[3] *Mohammed v. Reno*, 309 F.3d 95, 101 (CA2. 2002) (citations omitted).

to due process, including rights to a hearing, call witnesses, testify, and confront.[4]

27. Yet the Committee denied me a hearing, despite my showing that

(1) The facts the Committee relied on in imposing discipline were and are adamantly disputed;

(2) When forgoing a hearing for factfinding, and relying on lack of a genuine dispute of facts found in competing paper submissions, the Committee was required to view the evidence and resolve credibility and inferences in the light most favorable to me, but did not;

(3) I lost my right and my opportunity to cross-examine and confront my accusers, *see Peters*, 642 F.3d at 385 (due process in attorney disciplinary proceedings includes "*inter alia*, adequate advance notice of the charges, and the opportunity to effectively respond to the charges and confront and cross-examine witnesses" [Emph. Add.]);

(4) I was denied my rights to testify, and call and compel witnesses. "The right to offer the testimony of witnesses, and compel their attendance, if necessary, is in plain terms the right to present a defense."[5] "Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,' is a right to testify himself, should he decide it is in his favor to do so."[6]

(5) The Committee could not rely on issue preclusion as to statements made in prior proceedings because of, among other reasons, the heightened burden of proof the Committee must satisfy here[7].

(6) The Committee couldn't find culpable state of mind or intent required for discipline imposed based on the disputed paper record presented, they are quintessential questions of fact, *Peters*, 642 F.3d at 394-96 (attorney's "culpable state of mind" "would require detailed factual findings"); "It is important and ordinarily essential, that the trier of fact be afforded opportunity to observe the demeanor, on direct and cross-examination, of a witness whose motive is at issue.")[8]

---

[4] *In re Peters*, 642 F.3d 381 (2d Cir. 2011) (Committee could not "forgo an independent evidentiary hearing"); *see also In re Ruffalo*, 390 U.S. 544, 551 (1968).

[5] *See Washington v. Texas*, 388 U.S. 14, 19 (1967).].

[6] *Rock v. Arkansas*, 483 U.S. 44 (1987) [internal citations omitted].

[7] *see Cobb v. Pozzi*, 363 F.3d 89 (CA2 2004).

[8] *Consolidated Elec. Co v. U.S. for Use*, 355 F.2d 437, 438-9 (CA10 1966).

28. I've raised substantial claims that I was denied notice of the charge. *See Ruffalo*, 390 U.S. at 550-51 ("These are adversary proceedings of a quasi-criminal nature. The charge must be known *before* the proceedings commence. They become a trap when after they are underway, the charges are amended on the basis of testimony of the accused."); *see also Peters*, 642 F.3d at 387-90 (attorney denied notice if specific allegation not raised until third of five days of hearings ***and not explicitly characterized as a charge***). This suggests a strong likelihood the Second Circuit or Supreme Court will reject the Committee's idea that charging an attorney with "threatening further illegal conduct" constitutes fair notice of a charge for the specific crime of attempted larceny by extortion under NYPC §§ 110.00 and 155.05(2)), especially when, as here, the Orders to Show Cause *never specifically charged me with a crime and don'tt contain the words "extort," "extortion," or "larceny."*

29. Because I *had no idea* (and no reason to have one) that I was being charged with a state crime of attempted larceny by extortion, I was completely denied opportunity to be heard—including presenting evidence, calling witnesses, and testifying in my own behalf—as to legal and factual defenses that existed, as outlined (to the limited extent possible in such a cabined filing) in the motions to reconsider.

30. **Substantive**. I've also made strong claims that my rights of speech, association, petition, property, and liberty were violated by, e.g., the quasi-conviction for extortion. For example, the Committee seems to have disregarded the fact that it found my act of sending a demand letter with a proposed complaint to be extortion because of my prediction in the letter of adverse publicity if the case were to be tried, but (1) precedent on all fours bars examining an attorney's motive without a predicate

finding that the complaint and demands were devoid of merit[9]; (2) *Noerr-Pennington* bars it for the same reasons; and (3) the case the Committee relies on not only disclaims its application in litigation contexts[10], it was distinguished by SDNY Judge Gardephe (it's hard to miss, as on LEXIS *Dawkins* has a red stop sign), who held it irrelevant to whether sending a proposed complaint with a demand letter predicting adverse publicity was extortion under New York law ***which he then held was not.***[11]

### *There public interest weigh strongly in favor of a stay.*

31. The Ninth Circuit granted a stay pending appeal of discipline for Harriet Sawyer, who had been famously suspended for one year for her speech regarding Smith Act trials of alleged communists, which speech heavily criticized the

---

[9] Sussman v. Bank of Israel, 56 F.3d 450 (CA2 1995).

[10] *Dawkins v. Williams*, 511 F. Supp. 2d 248 (NDNY 2007). The Committee relied on this language, but for some reason forgot to include the italic bold portion, which makes clear it isn't to apply to litigation:

> The rationale for not making the good-faith defense available…appears to be that the type of threat proscribed by those sections are wholly gratuitous ones, in that the threatened disclosure would not in and of itself materially benefit the actor ***(for example, by being a part of the pursuit of some legal remedy)***, but simply is a tool to obtain money from the victim.

[11] *Bouveng v. Nyg Capital LLC*, 175 F. Supp. 3d 280 (SDNY 2016 [Emph. Add.]):

> ***Plaintiff's counsel's letter…and email…and…draft complaint do not constitute criminal extortion as defined under federal or New York law****.* The…letter merely states that — if Wey's lawyer does not contact Plaintiff's counsel…Plaintiff's counsel will be "forced to commence what is likely to be embarrassing litigation." Similarly, the email informs Wey that he has "one more chance to avoid what surely will be expensive and embarrassing litigation for [him], [his] company and [his] family. "The letter and email do not threaten that Plaintiff or her counsel will "go to the press with [her] claims," *see Dawkins*; [they]informed Wey that, if he did not contact Plaintiff's lawyers, Plaintiff intended to file a lawsuit against him — "a step that was necessary to pursue…[a] legal remedy."…***The fact that the allegations in the lawsuit might embarrass or affect the reputation of Wey, his friends, or his family does not convert Plaintiff's effort to enforce her legal rights into an extortion attempt. Unlike in Dawkins, the*** *references to "embarrassing litigation" in the letter and email were "part of a larger endeavor to obtain recompense for a perceived wrong," not simply threats to ruin Wey's reputation…Accordingly, Plaintiff's counsel's references to potentially "embarrassing litigation" clearly have a "nexus to a plausible claim of right*."

judiciary. The court took the grave First Amendment questions she raised into account to find a stay appropriate as well as noting that "the extent of the discipline [one year] is such as to be comparable in severity to imposition of a criminal penalty."[12]

32. So, not only was the Committee's proceeding quasi-criminal, given my one-year suspension, the *Smith* court would have said that it was effectively criminal in severity. It is thus all the more crucial to note that what was criminalized here was again my sending of a demand letter with a proposed complaint, and this was done without even considering the merits of the underlaying claim of right.

33. It is ironic this is happening in the downstate Second Circuit, for 20 years ago the SDNY held unconstitutional an act of Congress making it illegal for attorneys to advise clients about Medicaid planning. And Attorney General Reno publicly announced that no attorney would be prosecuted under it.[13]

34. It is hard to estimate the impact on the public that despite the history and precedent that sending demand letters are core, protected acts of petitioning, any attorney may at any time be quasi-convicted of extortion and effectively criminally punished without notice, a hearing, and all I was denied. Not everyone does Medicaid planning, but everyone winds up in court at one time or another. That the process of litigation demands would be quasi- or effectively- criminalized by a common-law pronouncement of a grievance committee, not at least the robust debate of legislation, and allowed to take place under such questionable processes is even more compelling.

**WHEREFORE**, it is respectfully requested that a stay of discipline pending appeal be granted, as well as any other relief as this court may deem just and proper.

---

[12] *In re Sawyer*, 256 F. 2d 553(CA9 1956). The Supreme Court reversed discipline on other grounds.
[13] See any of the many articles describing the 1997 "Granny's Lawyer Goes to Jail" law.